**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BANK OF AMERICA, N.A.**, a national banking association,<br><br>*Plaintiff,*<br><br>vs.<br><br>**NYLSI, INC.,** a Delaware corporation, d/b/a Sunrise Toyota Scion,<br><br>*Defendant.* | Case Number 24-cv-_____<br><br>**VERIFIED COMPLAINT FOR BREACH OF CONTRACT AND FOR OTHER RELATED RELIEF** |

Plaintiff, **BANK OF AMERICA, N.A.**, by and through its attorneys, Chapman and Cutler LLP, by way of Complaint against defendant, **NYLSI, INC.**, states:

JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S. C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) in that (a) a substantial part of the events giving rise to this action occurred in the Eastern District of New York (b) upon information and belief, defendant, NYLSI, Inc. ("*Dealer*" or "*Defendant*"), is authorized to do business in the State of New York, and (c) upon information and belief, Defendant has its principal place of business in the Eastern District of New York, specifically Oakdale, Suffolk County, New York.

THE PARTIES

3. Bank of America, N.A. ("*Bank*" or "*Plaintiff*") is a national banking association chartered under the laws of the United States of America with its main office and principal place of business located in Charlotte, North Carolina as designated in its Articles of Association and,

as such, it is a citizen of the State of North Carolina for diversity jurisdiction purposes by virtue of 28 U.S.C. § 1348.

4. Upon information and belief, defendant NYLSI, Inc. is a Delaware corporation authorized to do business in the State of New York and maintains its principal place of business at 3984 Sunrise Highway, Oakdale, New York 11769.

## NATURE OF ACTION

5. This is an action by Bank to enforce a repurchase obligation and other rights in connection with an agreement between Dealer and Bank pursuant to which Dealer sold and assigned to Bank a retail installment sale contract between Dealer and one of its customers.

## FACTUAL ALLEGATIONS

A. THE DEALER AGREEMENT

6. Bank and Dealer entered into a certain Auto Group Retail Dealer Agreement dated as of January 8, 2009 (the "*Dealer Agreement*"). (A copy of the Dealer Agreement is annexed hereto as **Exhibit "1"**).

7. Pursuant to the Dealer Agreement, from time to time, Dealer sold to Bank certain contracts (each designated a "*Contract*") between Dealer and its customers (each designated a "*Buyer*"), relating to Dealer's sale to Buyer of a motor vehicle (each designated a "*Unit*"). [Dealer Agreement, Ex. 1, p. 4, at Preamble and at § 1.]

8. In connection with each such assignment, Dealer represented and warranted to Bank "[a]s to each Contract assigned by Dealer to Bank" that, among other things, (i) "[t]he Buyer is who he, she or it purports to be" and (ii) "[t]he Buyer has not fraudulently used the identity of another person to purchase the Unit". [Dealer Agreement, Ex. 1, p. 5, at §§ 4.B(14) and 4.B(15).]

9.   In addition, Dealer represented and warranted to Bank that "[a]ll information provided by the Dealer concerning the Buyer is true and accurate and the credit application completed by the Buyer is true, complete and accurate to the best of Dealer's knowledge." [Dealer Agreement, Ex. 1, p. 5, at § 4.B(5).]

10.  Pursuant to the Dealer Agreement, Dealer is obligated "to repurchase any assigned Contract" if (a) Bank "reasonably determines that there is a breach of any of Dealer's representations or warranties with respect to the Contract …" or (b) "Buyer refuses to make payment on the Contract based in whole or in part upon an assertion of any defense against Dealer …." [Dealer Agreement, Ex. 1, p. 6, at §§ 7(1) and 7(3).]

B.   THE STIVERS CONTRACT

11.  Pursuant to the Dealer Agreement, Dealer assigned to Bank a Retail Installment Contract Simple Finance Charge dated January 2, 2022 (the "*Stivers Contract*"), purportedly between Dealer and Tyler S. Stivers (the "*Identified Buyer*") with respect to a used 2018 Land Rover Range Rover bearing Vehicle Identification Number SALGS2SV2JA511095 (the "*Stivers Unit*"). (A copy of the Stivers Contract is attached hereto as **Exhibit "2"**.)

12.  The Stivers Contract states that the "Amount Financed" (which was $91,130.56, plus a finance charge of $13,298.80 for a total of $104,429.36), was to be repaid over seventy-two months at the rate of $1,450.38 per month beginning on February 1, 2022. [Stivers Contract at p. 1.]

13.  In connection with the Stivers Contract, Dealer obtained a credit application dated December 30, 2021 (the "*Credit Application*") stating that the Identified Buyer (i) was Tyler Stivers, (ii) resided at 111-18 158th Street, Jamaica, Queens, New York, (iii) had resided at that address for five years, (iv) was self-employed as the President of 123 Home Improvement, (v) had held that position for ten years, (vi) had gross income of $30,000 per month, and (vii) owned

his home outright (collectively, the "*Credit Application Statements*"). (A copy of the Credit Application is annexed hereto as **Exhibit "3"**).

14. Pursuant to the Stivers Contract, Bank established a loan account in the name of the Identified Buyer ending in 3812 (the "*Account*").

15. Bank received only two payments on the Account (March 8, 2022, and April 27, 2022) totaling $2,920.76. Two other payments (February 28, 2022, and April 21, 2022) were returned for insufficient funds.

16. Because Bank has not received any payments since April 27, 2022, there was (and remains) an event of default pursuant to the Stivers Contract entitling Bank to repossess the Stivers Unit (the "*Buyer Payment Default*"). [Stivers Contract, Ex. 3, p. 3, at §§ 3(b) and 3(d).]

17. After applying the two payments received, the balance due on the Stivers Contract as of July 15, 2024, was $91,093.79 (exclusive of attorneys' fees and costs).

C.  BANK'S ATTEMPT TO RECOVER THE STIVERS UNIT AND COLLECT THE DEBT.

18. Following the Buyer Payment Default, Bank sought to repossess the Stivers Unit from the individual identified as the buyer in the Stivers Contract, Tyler S. Stivers ("*Stivers*").

19. Bank was unable to locate the Stivers Unit at the address set forth in the Contract (111-18 158th Street, Jamaica, New York) or at the only active address the Bank identified for Stivers (2155 W 2855 S, Ogden, Utah).

20. When Bank sought to repossess the Stivers Unit from Stivers, he advised Bank that he did not have the Stivers Unit and had never been in possession of the Stivers Unit.

21. Stivers further advised Bank that he had been the victim of identity theft.

22. As a result, Stivers refused to pay Bank for the Stivers Unit claiming defenses against Dealer, including, without limitation, that he was not the person who signed the Credit

Application and the Stivers Contract and acquired the Stivers Unit from the Dealer and that he had been the victim of identity theft (the "*Buyer Defenses*").

D.  **DEALER'S BREACHES OF THE REPRESENTATIONS IN THE DEALER AGREEMENT REGARDING THE STIVERS CONTRACT.**

23. Upon information and belief, the person who signed the Stivers Contract and acquired the Stivers Unit from Dealer was not the person named in the Stivers Contract (Stivers).

24. Thus, Dealer's representation in Section 4.B(14) of the Dealer Agreement that the Buyer was who he purported to be is false (the "*Buyer Identity Misrepresentation*").

25. Upon information and belief, the person who signed the Stivers Contract and acquired the Stivers Unit from Dealer fraudulently used Stiver's identity to purchase the Stivers Unit.

26. Thus, Dealer's representation in Section 4.B(15) of the Dealer Agreement that the Buyer had not fraudulently used the identity of another is false (the "*Identity Theft Misrepresentation*").

27. Dealer knew or using reasonable efforts could have established that the Credit Application Statements (i) that the person executing the Credit Application was Stivers, (ii) that Stivers resided at 111-18 158th Street, Jamaica, Queens, New York, (iii) that Stivers had resided at that address for five years, (iv) that Stivers was self-employed as the President of 123 Home Improvement, (v) that Stivers had held that position for ten years, (vi) that Stivers had gross income of $30,000 per month, and (vii) that Stivers owned his home outright each was false.

28. Thus, Dealer's representation in Section 4.B(5) of the Dealer Agreement that the Credit Application Statements were accurate to the best of Dealer's knowledge is false (the "*Dealer's Knowledge Misrepresentation*").

5

29. The Buyer Defenses, the Buyer Identity Misrepresentation, the Identity Theft Misrepresentation, and the Dealer's Knowledge Misrepresentation (collectively, the "*Repurchase Events*"), each require Dealer to repurchase the Stivers Contract and the Stivers Unit pursuant to Section 7 of the Dealer Agreement.

E.   THE REPURCHASE DEMAND

30. Based on the Repurchase Events, by letter dated April 26, 2023, Bank demanded that Dealer Repurchase the Stivers Contract (the "*Repurchase Request*").  (A copy of the Repurchase Request is attached hereto as **Exhibit "4"**.)

31. Thereafter, by letters dated August 4, 2023, and February 22, 2024, Bank's counsel expanded on and reiterated Bank's Repurchase Request (together, the "*Repurchase Demand Letters*").  (Copies of the Repurchase Demand Letters, exhibits omitted, are attached hereto respectively as **Exhibit "5"** and **Exhibit "6"**.)

32. Despite the Repurchase Request and the Repurchase Demand Letters, Dealer has not repurchased the Stivers Contract from Bank.

33. Pursuant to the Dealer Agreement, the amount of the Repurchase Payment due to Bank as of July 28, 2022 (the date Bank charged off the loan), was $91,034.09, consisting of a principal amount (amount financed) of $89,523.25, interest of $674.68, and Bank's direct fees and costs of $836.16, plus attorneys' fees and costs incurred by Bank in connection with the repurchase demand (together with interest, attorneys' fees and costs and other amounts accruing thereafter, the "*Payment Amount*").

FIRST CLAIM
(BREACH OF CONTRACT – DEALER AGREEMENT)

34. Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

35. Dealer breached its representations and warranties to Bank.

36. First, Dealer represented and warranted to Bank that "[t]he Buyer has not fraudulently used the identity of another person to purchase the [Stivers] Unit …." [*See* Dealer Agreement, Ex. 1, at § 4.B(15).]

37. Second, Dealer represented and warranted to Bank that "[t]he Buyer is who he, she or it purports to be …." [*See* Dealer Agreement, Ex. 1, at § 4.B(14).]

38. Further, Dealer represented and warranted to Bank that "[a]ll information provided by the Dealer concerning the Buyer is true and accurate and the credit application completed by the Buyer is true, complete and accurate to the best of Dealer's knowledge." [*See* Dealer Agreement, Ex. 1, at § 4.B (5).]

39. Upon information and belief, the person who bought the Stivers Unit from Dealer fraudulently used Stivers identity to purchase the Stivers Unit.

40. Upon information and belief, the person who bought the Stivers Unit from Dealer was not Stivers.

41. Dealer knew or should have known that the Credit Application was not true and accurate in that (a) Stivers was not the buyer of the Stivers Unit; (b) Stivers did not sign the Credit Application; (c) the Credit Application states that Stivers was a resident of New York when, at the time, Stivers was not a resident of New York, and (d) the person who bought the Stivers Unit from Dealer presented a Texas drivers' license issued in 2018 when the Credit Application stated that the buyer had been a resident of New York for five years.

42. Bank made a "reasonable determination" that Dealer breached the representations contained in the Dealer Agreement.

43. Stivers refused to make payment to Bank on the Stivers Contract based on a defense against Dealer. Specifically, upon information and belief, (a) Stivers was not the person who signed the Credit Application, (b) Stivers was not the person who signed the Stivers Contract, (c) Stivers was not the person who acquired the Stivers Unit from the Dealer, and (d) Stivers had been the victim of identity theft.

44. As a result, Dealer was obligated to repurchase the Stivers Contract from Bank.

45. Despite demand, Dealer has refused to repurchase the Stivers Contract from Bank.

46. There is due and owing to Bank pursuant to the Dealer Agreement the principal sum of $91,093.79, plus accrued and accruing default rate interest, attorneys' fees and costs, and all other amounts due pursuant to the Dealer Agreement.

47. Accordingly, Bank is entitled to a money judgment against Dealer in the principal sum of $91,093.79, plus accrued and accruing default rate interest, attorneys' fees and costs and all other amounts due pursuant to the Dealer Agreement.

SECOND CLAIM
(UNJUST ENRICHMENT)

48. Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

49. Bank paid Dealer at least $91,093.79 for the Stivers Contract pursuant to the Dealer Agreement.

50. Due to the deficiencies in the Stivers Contract, the Stivers Contract was not worth the amount Bank paid to Dealer for the Stivers Contract.

51. As a result, Dealer has been unjustly enriched.

52. Accordingly, Bank is entitled to a money judgment against Dealer in an amount to be determined at trial, including but not limited to the amount Bank paid Dealer to acquire the Stivers Contract, less any payments actually received by Bank under the Stivers Contract.

**WHEREFORE**, plaintiff Bank of America, N.A. respectfully demands judgment on each of its claims against defendant NYLSI, Inc., together with such other and further relief which as to this Court seems just, proper, and equitable.

Dated: New York, New York
July 23, 2024

Respectfully submitted,

CHAPMAN AND CUTLER LLP

By: /s/ J. Alex Kress
J. Alex Kress
Daniel F. Flores
1270 Avenue of the Americas, 30th Floor
New York, NY  10020
Telephone: (212) 655-6000
Facsimile:  (212) 697-7210
Email: akress@chapman.com
*Attorneys for Plaintiff Bank of America, N.A.*

VERIFYING AFFIDAVIT

STATE OF OHIO            )
                         ) ss.
COUNTY OF FRANKLIN       )

MICHAEL SHAW of full age, being duly sworn, upon his oath, deposes and says:

1. I am a Senior Vice President and National Sales Executive for Bank of America, N.A., plaintiff in this action. In my capacity with the Plaintiff, I am in charge of plaintiff's relationship with the defendant NYLSI, Inc. d/b/a Sunrise Toyota and Scion and I am fully familiar with the facts of this case.

2. I have read the foregoing Verified Complaint, and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, from public records, the records of Plaintiff or information provided to Plaintiff by members and employees of defendant NYLSI, Inc. d/b/a Sunrise Toyota and Scion.



LINA RAHMAN
Notary Public
State of Ohio
My Comm. Expires
November 20, 2026

_____
MICHAEL SHAW

Sworn and subscribed to before me
this 17th day of July 2024

_____
NOTARY PUBLIC

Complaint for Breach of Repurchase Obligation Under Dealer Agreement 4883-5765-6763 v2 (002)